NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

VINCENT CORASIO, PETITIONER, v. IMHOFF BERG SILK DYEING COMPANY, RESPONDENT.

Decided December 15, 1937.

For the petitioner, *David Cohn.*

For the respondent, *George E. Meredith.*

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

The present petition was filed on June 2d, 1936, averring among other things that the petitioner has developed a traumatic neurosis which together with injuries sustained to his lower back and sacrum has disabled him to the extent of one hundred per cent. total permanent disability. The answer filed by respondent on June 24th, 1936, denied any such increase. In regular course the matter came on for trial before me, John J. Stahl, a deputy commissioner of compensation, at the Paterson chambers of the workmen's compensation bureau, and after several hearings and continuances was concluded on August 3d, 1937.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Petitioner's right to a further recovery of compensation is challenged by the respondent on two specific grounds: (1)

that the petitioner has failed to sustain the burden of proving that his condition has become worse since the original hearing; and (2) that the petitioner has not shown that he is suffering from a condition due to trauma in excess of twenty per cent. of total permanent disability—the allowance already paid him.

A brief summary of the earlier proceedings is essential in order to pass upon the issues raised in the present case. The original petition was filed on May 29th, 1934, and set forth that, as a result of an accident on April 9th, 1934, petitioner sustained an injury to his back with an involvement of the lumbar region, incapacitating him to the extent of fifty per cent. of total and permanent disability. Respondent's answer denied that petitioner suffered an injury by accident arising out of and in the course of his employment. During the course of trial, after both parties had produced considerable lay and medical testimony which clearly established the fact that petitioner met with an accident on April 9th, 1934, arising out of and in the course of his employment with respondent when he slipped on the wet floor while pouring dyestuffs into a vat and injured his back upon falling, and because of the wide conflict of opinion among the medical experts as to the nature and extent of disability caused by the said injury, counsel, following a conference between themselves, agreed upon a percentage of twenty per cent. of permanent and total disability as representing the degree of petitioner's incapacity, and requested that an award be made on that basis. An award was accordingly entered as evidenced by a certain determination and rule for judgment bearing date of July 30th, 1934, by the terms of which respondent paid to petitioner one hundred weeks compensation at the rate of $15.33 for permanent disability, and fifteen weeks at the same rate for temporary disability, covering the period from April 9th, 1934, to July 23d, 1934, together with certain allowances for medical and attorney's fees.

In order to pass upon the first ground raised by the respondent, it becomes necessary to determine the character of the award. If the award was the result of independent findings of the bureau based upon the evidence in the case,

the judgment would be final and conclusive, subject only to continued jurisdiction under paragraph 21(f) to modify the said award on the ground of increased or diminished disability. *Tucker* v. *Frank J. Beltramo, Inc.*, 117 *N. J. L.* 72; 186 *Atl. Rep.* 821. If on the other hand the award was the result of agreement and compromise between the parties or attorneys, the judgment would lack the element of finality and not being *res judicata,* petitioner would still be entitled upon a subsequent petition to a trial on the merits without being limited in his proofs to the establishment of increased disability. *Streng's Piece Dye Works, Inc.,* v. *Galasso,* 118 *N. J. L.* 257; 191 *Atl. Rep.* 874. The award in the instant case obviously falls within the latter class. Hence petitioner is entitled to a further recovery of compensation merely upon proof that the *quantum* of disability resulting from the said accident is greater than twenty per cent. of total. Respondent's contention that it is incumbent upon petitioner to show that his condition has become worse since the original hearing is without merit.

As to the second ground urged by respondent, namely, that petitioner has failed to prove that he is suffering from a condition due to trauma in excess of twenty per cent. of total disability, I feel that the evidence by an overwhelming preponderance establishes the fact of a much greater disability. Such fact was apparent at the earlier trial and recorded in the determination and rule for judgment in the following language: "I further find that the petitioner in his present condition is totally incapacitated and that the disability ultimately resulting therefrom and chargeable to trauma amounts to only twenty per cent. of permanent total disability." Such finding obviously rested upon speculation as to future developments and was made only upon the assurances by some of the medical experts that many of petitioner's then existing symptoms were transitory and would clear up with the passage of time. Instead of an improvement petitioner's condition has grown progressively worse, and many of the symptoms which were considered as temporary have not only remained but have become much greater in severity.

The nature and extent of disability sustained by the petitioner as a result of the accident is largely a question of medical opinion. Both parties produced numerous physicians who expressed expert medical opinion, as well as many lay witnesses who testified to petitioner's physical condition upon their observations. A definite contrariety of medical viewpoint was expressed by the physicians produced by the respective parties. This is apparent upon analyzing their testimony.

Dr. Pulvio Patella, Dr. Paul Rauschenbach, Dr. Thomas Manley, Dr. Hans Wassing and Dr. Roy R. Schubert appeared as medical witnesses in behalf of the petitioner.

Dr. Patella, the original treating physician, testified that upon a recent examination he found more fusion and ankylosis between the fifth lumbar vertebra and the sacrum; more limitation in the lower spine; more definite muscular contracture caused by enforced and prolonged abnormal body posture; and more limitation of both lower extremeties. He gave as his diagnosis: osteo-chrondritis of the lumbo-sacral joint, neuritis of the spine involving both sciatic nerves, muscular contracture, and a general traumatic neurosis, and expressed the opinion that petitioner is one hundred per cent. totally and permanently disabled.

Dr. Rauschenbach, an orthopedist of thirty years practice, testified that the petitioner was suffering from a condition of osteo-chronditis at the juncture of the fifth lumbar vertebra and the sacrum which was undergoing a process of arthrodesis or a fixation of the joint. It was his opinion that petitioner's disability was equivalent to one hundred per cent. of total.

Dr. Thomas Manley testified that the petitioner was suffering from rigidity and limitation of motion of the spine, due to a chronditis between the fifth lumbar vertebra and the sacrum. He estimated the disability as one hundred per cent. of total.

Dr. Hans Wassing, a specialist in neurology, testified that petitioner was suffering from a marked traumatic neurosis superimposed upon a low spinal column lesion with some nerve root involvement. He expressed the opinion that the disability was equivalent to one hundred per cent. of total.

Dr. Schubert, specializing in orthopedics, testified that the petitioner was suffering from a lesion in the lower lumbar region which he diagnosed as a rupture of the nucleus pul posus of the fifth lumbar vertebra, causing a pressure of the nerve roots in the spinal cord. He estimated the disability as one hundred per cent. of total.

The respondent produced three physicians, Dr. Andrew C. Ruoff, Dr. Jack Blumberg and Dr. Herman H. Hollingsworth, whose opinions were diametrically contrary to those of petitioner's experts.

Dr. Ruoff testified that in his opinion the petitioner was suffering from no organic injury in his lower back; that he voluntarily assumed an apparent fixation of his pelvis which produced a stooped-over posture; and that the neurosis and hysteria, present at the first trial, have now cleared up. He further testified that although he considered the petitioner's condition the equivalent to one hundred per cent. of total disability at the first trial, he believed his present condition did not exceed twenty per cent. of the total, because of marked improvement which had taken place during the past two years.

Dr. Jack Blumberg, specialist in neurology, testified that upon his first examination of petitioner in 1934 he found him disabled to the extent of one hundred per cent. of total, based upon a neurosis; and that upon his recent examination he found the condition to be the same with the exception of corneal and pharyngeal reflexes which were absent at the earlier examination and present at the last one. While the witness refrained from branding the petitioner as a malingerer, he testified that his estimate of disability would be considerably less than one hundred per cent. of total if the symptoms and complaints of the petitioner were not genuine.

Dr. Hollingsworth, medical director of the carrier's Clifton clinic, testified that in his opinion the petitioner was suffering from no permanent disability as a result of the accident. He definitely branded the petitioner as a malingerer and attributed his entire condition to exaggeration and simulation, admitting, however, that petitioner may have suffered originally from an injury to the lower back.

In this posture of the proofs with such wholly irreconcilable medical testimony, it becomes necessary to determine which of the opinions deserve the greater weight in accordance with entire evidence in the case. I feel that the decided weight of the medical testimony leans more strongly toward the views expressed by the petitioner's experts. By adopting their opinions together with my observation of the petitioner during the several days of trial—a man broken down in health, markedly crippled, drawn up and emaciated, apathetic in appearance with a discernible postural deformity requiring the aid of a crutch and a cane in order to get about—I am reasonably satisfied that he is suffering from permanent disability as a result of the accident to the extent of one hundred per cent. of total, based upon an organic lesion of the lumbosacral joint, together with a severe traumatic neurosis superimposed thereon.

I find, therefore, that the petitioner is entitled to an award of compensation upon the basis of one hundred per cent. of total and permanent disability, being equivalent to four hundred weeks at the rate of $15.33, less one hundred weeks heretofore paid pursuant to the terms of the previous award. This award shall be subject to such further consideration upon the expiration of the four hundred week period as the case may warrant under the provisions of paragraph 11(b).

\*    \*    \*    \*    \*    \*    \*

JOHN J. STAHL,
*Deputy Commissioner.*